[No. 18236-0-II.    Division Two.    June 28, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. LINCOLN MANCE, *Appellant*.

*Mary K. High*, for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney*, and *Thomas C. Roberts, Deputy*, for respondent.

ARMSTRONG, J. — Lincoln Mance appeals his conviction of possession of a controlled substance, contending that the trial court erred in refusing to suppress evidence of cocaine recovered during his detention following a car stop. Mance also claims the State failed to show a proper chain of custody for the drug evidence. We hold that, given the stipulated facts before it, the trial court erred in denying Mance's suppression motion. Because we reverse Mance's conviction on this basis, we do not reach the chain of custody issue.

## FACTS

At the suppression hearing, the parties stipulated to the following facts. On March 4, 1994, Tacoma police arrested Mance in downtown Tacoma because the car he was driving was listed on their "hot sheet," a list of recently reported stolen vehicles. Several days earlier, Mance had purchased the car from Paulson's Fine Cars, but a misunderstanding occurred that resulted in owner Gerald Paul-

son reporting the car as stolen. The problem was resolved on March 2, and, with Mance present, Paulson called police to cancel the stolen vehicle report. The police report states that a call was received on March 3 attempting to cancel the stolen vehicle report, but no cancellation report was on file.

The police report of Mance's arrest, upon which the trial court relied, states that police

> made a felony stop at S. 19th & Fawcett and arrested the driver, later ID'ed as Mance. Mance appeared to be under the influence of some kind of drug and immediately began struggling with [Officer] Roberts as Roberts was handcuffing him. Mance eventually had to have leg restraints put on him, and while he was lying prone on the concrete, he spit out a large rock of suspected crack cocaine.

Mance was initially charged with possession of narcotics and possession of a stolen car. The latter charge was dropped.

## DISCUSSION

In its conclusions of law, the trial court stated that police "had probable cause to arrest the defendant when faced with the apparent stolen status of the . . . car, even though the car was not in fact stolen on March 4, 1994." We review a trial court's conclusions of law de novo. *Dempere v. Nelson*, 76 Wn. App. 403, 406, 886 P.2d 219 (1994), *review denied*, 126 Wn.2d 1015 (1995).

Mance argues that reliance on the "hot sheet" alone did not give the officers probable cause to arrest him. Probable cause exists when the arresting officers are aware of facts and circumstances, based on reasonably trustworthy information, sufficient to cause a reasonable officer to believe a crime has been committed. *State v. Lund*, 70 Wn. App. 437, 444-45, 853 P.2d 1379 (1993), *review denied*, 123 Wn.2d 1023 (1994). Probable cause is determined by the facts and circumstances " 'within the officer's knowledge *at the time of the arrest.*' " *State v. Fore*, 56 Wn. App.

339, 343, 783 P.2d 626 (1989) (emphasis ours), *review denied*, 114 Wn.2d 1011 (1990) (quoting *State v. Fricks*, 91 Wn.2d 391, 398, 588 P.2d 1328 (1979)). Probable cause cannot be supported by information police gain *following* an arrest. *See Rios v. United States*, 364 U.S. 253, 261-62, 80 S. Ct. 1431, 4 L. Ed. 2d 1688 (1960); *Henry v. United States*, 361 U.S. 98, 103, 80 S. Ct. 168, 4 L. Ed. 2d 134 (1959).

The police report set forth the sequence of events: first, Mance was stopped and arrested; he appeared to be under the influence of some kind of drug; then he struggled and spat out the cocaine. Because Mance was arrested before the police were aware of any facts that might have established probable cause to arrest for an offense other than possession of stolen property, the question is whether the police had probable cause to arrest solely on the basis of the "hot sheet." If police did not have probable cause, the arrest violated Fourth Amendment guarantees against unlawful seizure, and any evidence obtained must be suppressed. *See State v. Tarica*, 59 Wn. App. 368, 378, 798 P.2d 296 (1990), *overruled on other grounds by State v. McFarland*, 127 Wn.2d 322, 899 P.2d 1251 (1995).

The "fellow officer" rule justifies an arrest on the basis of a police bulletin, such as a "hot sheet," if the police agency issuing the bulletin has sufficient information for probable cause. *See Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 91 S. Ct. 1031, 28 L. Ed. 2d 306 (1971). The bulletin does not, however, insulate the arresting officer from problems with the sufficiency or reliability of the information known to the issuing police agency. If the issuing agency lacks probable cause, then the arresting officer will also lack probable cause. *Whiteley*, 401 U.S. at 568.

Here, the police who initially placed the car's license plate number on the "hot sheet" on March 2 had probable cause to believe a crime had been committed. Paulson's report of a stolen car was reasonably trustworthy because it was a report from a person who believed himself the victim of a crime. *See State v. Rodriguez*, 53 Wn. App. 571,

574-75, 769 P.2d 309 (1989). Thus, if there had been no attempt to cancel the stolen vehicle report, police would have had probable cause to arrest Mance for possession of stolen property.

But when police fail to correct their records, probable cause may no longer exist by the time an arrest is made. "[P]olice may not rely upon incorrect or incomplete information *when they . . . are at fault in permitting the records to remain uncorrected.*" 2 WAYNE LAFAVE, SEARCH AND SEIZURE § 3.5(d), at 272 (3d ed. 1996) (emphasis ours). No Washington courts have addressed this issue, but courts in other jurisdictions are generally in accord with this principle. *See, e.g., People v. Mitchell*, 678 P.2d 990 (Colo. 1984); *People v. Ramirez*, 34 Cal. 3d 541, 668 P.2d 761 (1983); *Carter v. State*, 18 Md. App. 150, 305 A.2d 856 (1973).

In *Ramirez*, the California Supreme Court held that an arrest was illegal when the arresting officer was told there was an outstanding warrant for the defendant's arrest, but later inquiry revealed the warrant had been recalled six months earlier. *Ramirez*, 668 P.2d at 762, 768. The *Ramirez* court pointed out that under the "fellow officer" rule, accurate information within the collective knowledge of the police is imputed to the arresting officers:

> [I]f we impute to the arresting officer the collective knowledge of law enforcement agencies for the purpose of establishing probable cause, we must also charge him with knowledge of information exonerating a suspect formerly wanted in connection with a crime. The 'fellow officer' or 'collective knowledge' rule cannot function solely permissively, to validate conduct otherwise unwarranted; the rule also operates prohibitively, by imposing on law enforcement the responsibility to disseminate only accurate information.

*Ramirez*, 668 P.2d at 764-65.

Here, Paulson called police, apparently on March 2, to cancel the stolen vehicle report. The police report acknowledges that police had received a call canceling the stolen

vehicle report, but states no cancellation report was on file. Whether the police are at fault in failing to correct their records is a question of fact, not of law. 2 LaFave, *supra*, at 275-76; *see also State v. Hoffman*, 116 Wn.2d 51, 98, 804 P.2d 577 (1991) (determination as to whether probable cause for warrantless arrest existed is factual question), *aff'd sub nom. McGinnis v. Blodgett*, 67 F.3d 307 (9th Cir. 1995).

The State had the burden of proving that the two-day delay between the attempted cancellation of the stolen vehicle report and Mance's arrest was reasonable. *See* 5 Wayne LaFave, Search and Seizure § 11.2(b), at 38 (3d ed. 1996). LaFave notes that most jurisdictions have adopted the following dichotomy: where the issue is the validity of a search or seizure conducted pursuant to a warrant, the burden of proof is on the defendant; but where a warrantless search or seizure is challenged, the prosecution bears the burden of proof. 5 LaFave, *supra*, at 38. Supporting this rule are cases holding that the defendant bears the burden when challenging the sufficiency of a search warrant. *See State v. Fisher*, 96 Wn.2d 962, 639 P.2d 743, *cert. denied*, 457 U.S. 1137 (1982); *State v. Rakosky*, 79 Wn. App. 229, 901 P.2d 364 (1995); *State v. Trasvina*, 16 Wn. App. 519, 557 P.2d 368 (1976), *review denied*, 88 Wn.2d 1017 (1977). In an earlier case where the issue was whether the defendant had consented to a warrantless search, the court placed the burden of proof on the defendant. *State v. Smith*, 50 Wn.2d 408, 412, 314 P.2d 1024 (1957). But *Smith* is distinguishable because it did not involve the existence of probable cause.

The rationale for placing the burden on the prosecution is particularly compelling where the issue is the existence of probable cause. In cases such as the one before us, placing the burden of proof on the defendant places him in an impossible situation because the facts allegedly constituting probable cause " 'are peculiarly within the knowledge and control of the police.' " 5 LaFave, *supra*, at 40 n.39 (quoting *United States v. Longmire*, 761 F.2d 411 (7th Cir.

1985)). 'Although no Washington cases have addressed the burden of proof issue in the context of proving probable cause, we are confident that a distinction drawn on the basis of whether a warrant had been issued is the correct approach. Thus, because the State made no effort to prove that its delay was reasonable, Mance's conviction must be reversed.

We emphasize that our holding is limited by the stipulated facts stating that Mance's arrest occurred first in the sequence of events. If Mance had simply been detained for investigation[1] and not arrested until after he spat out the cocaine, the analysis would be different and the arrest might have been lawful.

SEINFELD, C.J., and MORGAN, J., concur.

---

[1]In *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), the court held that police may stop and frisk a suspect without having a warrant if they have a reasonable belief the person is armed and dangerous. *Terry*, 392 U.S. at 20. Under *Terry*, police may also conduct a brief warrantless detention to investigate a crime. *See State v. Williams*, 102 Wn.2d 733, 737, 689 P.2d 1065 (1984), and cases cited therein.