# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
          Respondent, )
v. )
JASON RAY LEE, )
          Appellant. )

No. 68105-2-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: April 22, 2013

APPELWICK, J. — Lee appeals his conviction for felony violation of a no-contact order, challenging the trial court's denial of his motion to suppress. However, the trial court concluded that the law enforcement officer who encountered Lee while attempting to execute an arrest warrant had a legitimate basis to temporarily detain Lee and ask him to identify himself. That conclusion is supported by the court's unchallenged factual findings. Lee fails to demonstrate that the court erred in denying his motion to suppress. We affirm.

## FACTS

On May 13, 2011, several King County Sheriff's deputies went to Audrey Sampson's apartment in Kenmore, Washington to execute arrest warrants issued for two suspects. The lead officer, Deputy Jeff Durrant, knew that one of the individuals subject to an arrest warrant was Sampson's boyfriend. All of the officers knew Sampson.

Three officers went to the front door. The officers knocked and explained to Sampson why they were there. Sampson told the officers that the two individuals they were looking for were not there and the only person with her in the apartment was her

girl friend, Darla Kelly. Sampson agreed to allow the police to enter and verify this, as long as they did not "mess anything up."

Officer Tracey Dodd walked into Sampson's apartment knowing only the warrant suspects' names and birthdates.[1] She asked Sampson again whether anyone besides herself and Darla was in the apartment, and Sampson said, "No." But, as Officer Dodd walked toward the back of the apartment, she encountered a male, later identified as Jason Lee, pressed up against the kitchen pantry door, "obviously nervous, and visibly shaking." Lee appeared to be trying to conceal himself and Officer Dodd thought he might be one of the suspects they were looking for. She asked Lee to keep his hands visible, move to the kitchen table, and to identify himself.

After initially giving a false name, Lee provided his name to Officer Dodd. Lee said he had just been released from prison the day before. The officer ran a check on Lee's name and discovered there was a protection order in place prohibiting his contact with Kelly. After the other officers verified that the other person in the apartment was Kelly, Officer Dodd placed Lee under arrest. Lee waived his Miranda[2] rights and acknowledged that he knew about the protection order but said that "Darla was supposed to be getting it lifted."

---

[1] While it does not appear that Officer Dodd testified that she knew the suspects' dates of birth at the pretrial hearing or at trial, the trial court's finding on that issue is unchallenged and ultimately irrelevant to Lee's argument on appeal.

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Lee was charged with felony violation of a no-contact order. He filed a motion to suppress, arguing that his arrest was unlawful, because the police had no basis to detain and investigate him. The trial court denied the motion, concluding that Officer Dodd had a reasonable basis to temporarily detain Lee and ask him to identify himself. Following a trial, the jury convicted Lee as charged.

## DISCUSSION

We review the trial court's denial of a motion to suppress to determine whether substantial evidence supports the challenged findings of fact and whether the findings of fact support the conclusions of law. State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Where, as here, the findings of fact are unchallenged, we consider them verities on appeal. State v. Lohr, 164 Wn. App. 414, 418, 263 P.3d 1287 (2011). Accordingly, our review in this case is limited to a de novo determination of whether the trial court's conclusions of law are supported by the unchallenged factual findings. State v. Armenta, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997).

Lee argues that Officer Dodd's request for identification was an unconstitutional intrusion into his private affairs under article I, section 7 of the Washington State Constitution. On this basis, he claims that the trial court erred in denying his motion to suppress. Lee points out that he was in a private residence when detained. He does not, however, allege that the police officers executing the warrant were unlawfully present in Sampson's residence. Nor does he cite any authority in support of his suggestion that a heightened standard applies to his investigatory detention, because of

3

his location when the police encountered him. Ultimately, Lee acknowledges that his detention was constitutionally permissible if it was supported by individualized reasonable suspicion that he was engaged in criminal activity. And, here, the trial court found that Officer Dodd possessed only limited information about the men the officers were seeking to arrest. The court further found that having been told there were only two females in the apartment, Officer Dodd came upon Lee who was obviously nervous and appeared to be trying to hide. These facts sufficiently support the court's conclusion that the officer had a specific articulable basis to temporarily detain Lee and ask him to identify himself.

Lee also points out that while Officer Dodd had minimal information about the arrest warrant suspects, Deputy Durrant testified at trial that he knew the suspects from prior contacts. Lee argues that Deputy Durrant would have known upon seeing Lee that he was not one of the individuals the officers were looking to arrest. According to Lee, under the "fellow officer rule" Deputy Durrant's knowledge is imputed to Officer Dodd. Therefore, Officer Dodd's articulated basis for detaining him is invalid in light of the information possessed by Deputy Durrant.

But, Lee did not raise this argument below. Instead, Lee specifically claimed only that Officer Dodd had no legitimate reason to ask him to identify himself, because the individuals named in the arrest warrant were considerably older than he was.[3] Under RAP 2.5(a), "[t]he appellate court may refuse to review any claim of error which was not

---

[3] One suspect was 7 years older than Lee and the other was 14 years older.

4

raised in the trial court." As an exception to this general rule, an appellant may raise an issue for the first time on appeal if it is a manifest error affecting a constitutional right. RAP 2.5(a)(3); State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). A claim falls within this exception, if the defendant identifies a constitutional error and demonstrates that the alleged error actually affected the defendant's rights at trial. Kirkman, 159 Wn.2d at 926-27. RAP 2.5(a) does not mandate appellate review of a newly-raised argument where the facts necessary for its adjudication are not in the record, because in such a case the error is not manifest. State v. Riley, 121 Wn.2d 22, 31, 846 P.2d 1365 (1993).

The record here is not sufficiently developed to resolve this issue. In opposing Lee's motion to suppress, the State called only Officer Dodd to testify. Contrary to Lee's assertion, the evidence at the suppression hearing and at trial did not establish the extent of Deputy Durrant's familiarity with the arrest warrant suspects, or whether Lee bore any resemblance to the suspects. Also, because Lee did not advance this theory, Officer Dodd was not asked whether she would have asked Lee to identify himself based solely on his behavior and the fact that Sampson misinformed the police about who was present at the apartment. Without all the facts relevant to this issue in the record, we cannot fairly resolve Lee's claim. The claimed error is not manifest and does not satisfy RAP 2.5(a).

Even if the factual record were developed to allow review of this issue, the fellow officer rule, also known as the police team rule, has not been recognized outside of the

context of probable cause to make a warrantless felony arrest. See State v. Ortega, No. 85788-1, 2013 WL 1163954, at *4 (Wash. March 21, 2013). Nor does the rule operate in the manner Lee advocates. Under the fellow officer rule, a court may consider the cumulative knowledge of police officers in determining whether there was probable cause to arrest a felony suspect without a warrant. Id.; State v. Maesse, 29 Wn. App. 642, 647, 629 P.2d 1349 (1981). While an arresting officer may lack personal knowledge of the information that supplies probable cause to arrest, "cooperation between investigating officers or an arrest directive made by an officer possessing probable cause is sufficient to justify an arrest." State v. Alvarado, 56 Wn. App. 454, 456-57, 783 P.2d 1106 (1989).

Lee relies on State v. Mance, 82 Wn. App. 539, 918 P.2d 527 (1996), to argue that the fellow officer rule applies equally to exculpatory information. Specifically, he claims that where one officer has information that calls into question another officer's basis for detaining a suspect, that knowledge must be "imputed" to the investigating officer.

Mance does not support this expansive and unwieldy proposition. In Mance, police stopped the defendant and arrested him, because the vehicle he was driving was listed as stolen on the police department's "'hot sheet.'" Id. at 540. In fact, the defendant had purchased the vehicle, and the car dealer had reported it stolen based on a misunderstanding. Id. at 540-41. Upon learning of his mistake, the dealer called the police to cancel the report. Id. at 541. No cancellation report was on file, however,

when police arrested Mance two days later. Id. Mance resisted the arrest and in the course of the ensuing struggle, spit out a large rock of cocaine. Id. He was convicted of possession of cocaine and appealed, arguing that the trial court should have granted his motion to suppress the cocaine, because his warrantless arrest was unlawful. Id.

The appellate court determined that the arresting police officers were entitled to rely on the information contained in the police bulletin to establish probable cause to make the arrest. Id. at 542. The existence of the bulletin, however, did not insulate the arrest from a challenge based on the insufficiency or inaccuracy of the information underlying the bulletin. Id. "If the issuing agency lacks probable cause, then the arresting officer will also lack probable cause." Id. Thus, good faith reliance on information provided by a fellow officer does not prohibit a defendant from challenging the validity or accuracy of the information relied upon to support probable cause.

The Mance court relied on a factually analogous California case, People v. Ramirez, 34 Cal. 3d 541, 194 Cal. Rptr. 454, 668 P.2d 761 (1983). Mance, 82 Wn. App. at 543. In Ramirez, the California Supreme Court held that an arrest was illegal where the arresting officer was informed of an outstanding warrant for the defendant's arrest, but later inquiry revealed the warrant had been recalled six months earlier. Ramirez, 34 Cal. 3d at 546. The Ramirez court reasoned that while the fellow officer rule allows an officer without personal knowledge to rely on information provided by other law enforcement personnel, the rule also imposes on law enforcement a "responsibility to disseminate only accurate information." Id. at 547.

7

Both Mance and Ramirez involved the question of whether probable cause supported a warrantless felony arrest.[4] Mance and Ramirez do not remotely stand for the position that information not communicated to the investigating officer may serve to invalidate an investigatory stop, where the facts known to the officer were sufficient to warrant the intrusion. The Mance court itself suggested that the rule would not apply, and that the ultimately incorrect information in the police bulletin may have been sufficient to support Mance's temporary detention. Mance, 82 Wn. App. at 545. We agree. Extending such a rule to investigatory detentions would be contrary to well-settled principles. Our constitutional requirements are satisfied if the detaining officer can identify specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant the intrusion." State v. Glover, 116 Wn.2d 509, 514, 806 P.2d 760 (1991). In evaluating the reasonableness of the officer's determination, we look to totality of the circumstances known by the detaining officer at the time of the stop. Id.; State v. Jones, 117 Wn. App. 721, 728, 72 P.3d 1110 (2003).

Importantly, even if the fellow officer rule were applicable to an investigatory stop, the facts here are distinguishable from the cases applying it. Officer Dodd relied on the warrant, the representation of Sampson that only two women were present in the house, and the fact that Lee was present to stop and question him. The warrant

---

[4] In Ortega, our Supreme Court recently declined to apply the fellow officer rule to warrantless misdemeanor and gross misdemeanor arrests because the rule is inconsistent with the unambiguous presence requirement of RCW 10.31.100. Ortega, 2013 WL 1163954, at *4-*5.

information was not erroneous. Unlike <u>Mance</u> and <u>Ramirez</u>, no erroneous information was communicated to or relied upon by Officer Dodd.

Because Lee fails to demonstrate that the officer's request for his identification violated his constitutional rights, the trial court did not err in denying the motion to suppress. We affirm.

Appelwick, J.

WE CONCUR:

Spearman, A.C.J.

Becker, J.