# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  50404-9-II |
| Respondent, | |
| v. | |
| SHANE PEDERSEN, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J.  —  Shane Pedersen appeals his bench trial convictions for possession of a controlled substance-methamphetamine and violation of a court order-domestic violence.  He argues that the trial court erred when it denied his CrR 3.6 suppression motion because the State failed to establish the reliability of the database information that was the basis of the stop leading to his arrest.  Because the State failed to show that the information the officer who stopped Pedersen relied on was reliable, we agree.[1]  Accordingly, we reverse the trial court's order denying Pedersen's motion to suppress, reverse his convictions, and remand for further proceedings.

---

[1] Because we reverse on this ground, we do not consider Pedersen's argument that the Washington State Constitution is more protective of the right to privacy in this context.

FACTS

On November 9, 2016, Pedersen contacted the Lewis County Sheriff's Office and reported that his vehicle had been stolen.[2]  As a result of this report, the sheriff's office entered a stolen vehicle report in the Washington Crime Information Center (WACIC) database.

On November 14, Lewis County Sheriff's Deputy Tyson Brown located Pedersen's vehicle and impounded it.[3]  Deputy Brown then notified his dispatch that the vehicle should be removed from the WACIC database.  But the vehicle was not removed from the database.

On November 16, Officer Douglas Lowrey saw Pedersen's vehicle and ran the vehicle's license plates through the WACIC database.[4]  Officer Lowrey was notified that the vehicle had been reported as stolen.

Officer Lowrey followed the vehicle, which was being followed by a second vehicle. When Pedersen's vehicle and the other vehicle stopped, Officer Lowrey turned on his overhead lights and proceeded to investigate what he believed was a stolen vehicle.

After Officer Lowrey identified Pedersen and handcuffed him, he (Officer Lowrey) learned that Pedersen was violating a protection order by contacting the driver in the second vehicle.  At

---

[2] Pedersen does not challenge any of the trial court's findings of fact following the suppression hearing.  Accordingly, these facts are verities on appeal.  *State v. Gaines*, 154 Wn.2d 711, 716, 116 P.3d 993 (2005).

[3] The record shows that Deputy Brown located the vehicle shortly before midnight on November 14, but the time is not reflected in the trial court's findings.

[4] Officer Lowrey later testified that he routinely ran license plates on the make of car Pedersen was driving because they were frequently reported stolen.

some point after being handcuffed, Pedersen told Officer Lowrey that he (Pedersen) had recently retrieved his vehicle from the towing company.

Officer Lowrey arrested Pedersen for violating the protection order but not for any charges related to the vehicle. During a search of Pedersen's person following his arrest, Officer Lowrey discovered "a plastic baggie containing a crystalline substance." Clerk's Papers (CP) at 23.

## II. PROCEDURE

The State charged Pedersen with possession of a controlled substance-methamphetamine and violation of a court order-domestic violence. Pedersen moved to suppress the evidence obtained following the vehicle stop. He argued that Officer Lowrey did not have a sufficient legal basis to stop the vehicle because the WACIC database had not been timely updated and Officer Lowrey was not entitled to rely on information that was incomplete or incorrect due to the agency's own failure to update the information.

At the suppression hearing, Deputy Brown and Officer Lowrey testified to the facts above. In addition, Deputy Brown verified that law enforcement commonly relies on the WACIC database. Deputy Brown further testified that when a vehicle is reported as stolen or recovered, officers give this information to their dispatch or to someone in the sheriff's office's records department to update the WACIC database. But Deputy Brown did not testify about how the WACIC database was updated, how long it usually took to update the database, or the database's overall accuracy.

Following the suppression hearing, the trial court found the facts as described above. It also issued the following written conclusions of law:

2.1 The stop of Pedersen by Officer Lowrey was a valid investigatory detention pursuant to *Terry v. Ohio*,[5] and its progeny.

2.2 Officer Low[re]y's reliance on the information in [the WACIC database] was reasonable, and constituted reasonable suspicion to perform the investigatory detention.

2.3 The scope and duration of Officer Low[re]y's detention was reasonable.

2.4 The discovery of Pedersen's identity and the restraining order stemmed from the valid initial contact to investigate the stolen vehicle.

2.5 Because of the close proximity between the female and the male throughout Officer Lowrey's observations, contacting the female for her identification was lawful after learning of the restraining order.

2.6 Officer Low[re]y had probable cause to arrest Pedersen for violating the restraining order between he and [the protected party].

2.7 The discovery of the methamphetamine in Pedersen's coin pocket was pursuant to a valid search incident to arrest.

CP at 23. The trial court denied the motion to suppress and admitted the evidence discovered as a result of the stop.

Following a bench trial on stipulated facts, the trial court found Pedersen guilty as charged. Pedersen appeals his convictions.

## ANALYSIS

Pedersen argues that the trial court erred when it denied his motion to suppress. He contends that the detention was unlawful because the State failed to establish that Office Lowrey's reliance on the WACIC database was reasonable in light of the failure to update the WACIC records. We agree.

### I. LEGAL PRINCIPLES

Pedersen does not assign error to the trial court's findings of fact, so we limit our review to a de novo determination of whether the trial court's findings support its conclusions of law.

---

[5] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

*State v. Armenta*, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997). Although Pedersen assigns error to several conclusions of law,[6] his central argument is that the trial court erred when it found that the vehicle stop was a valid *Terry* stop because Officer Lowrey reasonably relied on the WACIC database information.

A police officer may conduct an investigatory stop, known as a *Terry* stop, if the officer can point to specific and articulable facts giving rise to a reasonable suspicion that the person stopped is, or is about to be, engaged in criminal activity. *State v. Acrey*, 148 Wn.2d 738, 747, 64 P.3d 594 (2003). The reasonableness of the officer's suspicion is determined by the totality of the circumstances known to the officer at the time of the stop. *State v. Weyand*, 188 Wn.2d 804, 811, 399 P.3d 530 (2017).

When examining the reasonableness of the officer's suspicion, the trial court may consider the collective knowledge of the police when they are working as a unit—this is known as the fellow officer rule. *State v. O'Cain*, 108 Wn. App. 542, 550-51, 31 P.3d 733 (2001) (applying fellow officer rule to *Terry* stop); *see also State v. Mance*, 82 Wn. App. 539, 542, 918 P.2d 527 (1996) (applying fellow officer rule to arrest). "But the arresting officer is also limited by any deficiencies in what the issuing police agency knows." *State v. Nall*, 117 Wn. App. 647, 650, 72 P.3d 200 (2003) (citing *Mance*, 82 Wn. App. at 542). A *Terry* stop conducted under the fellow officer rule is justified only if the police agency that issued the information had enough information to support a reasonable suspicion of criminal activity. *O'Cain*, 108 Wn. App. at 550-51; *see also United States v. Hensley*, 469 U.S. 221, 233, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985). "[T]he burden is

---

[6] He assigns error to conclusions of law 2.1, 2.2, 2.4, and 2.7.

on the State to establish the reliability of the [information] when the validity of a warrantless search or seizure is at issue." *State v. Sandholm*, 96 Wn. App. 846, 848, 980 P.2d 1292 (1999) (citing *Mance*, 82 Wn. App. at 544-45).

## II. Failure To Establish Reliability of WACIC Information

In *Mance*, we established that an arresting officer's ability to rely on the fellow officer rule is limited by any deficiency in what the agency knows. *Mance* is also factually similar to this case.

In *Mance*, the defendant purchased a car from a dealer, but a misunderstanding led to the dealer reporting the car as stolen. 82 Wn. App. at 540-41. Although the misunderstanding was resolved and the dealer contacted the police to cancel the stolen vehicle report, the police failed to cancel the stolen vehicle report. *Mance*, 82 Wn. App. at 541. Two days after the dealer contacted the police to cancel the stolen vehicle report, Mance was arrested for possessing a stolen vehicle. *Mance*, 82 Wn. App. at 541, 544. While the officers were restraining him, Mance spit out a large rock of cocaine. *Mance*, 82 Wn. App. at 541.

On appeal, we employed the fellow officer rule and held that the arresting officers were bound by what the agency issuing the inculpatory information knew or should have known about that information's validity. *Mance*, 82 Wn. App. at 543. We stated that although the officers "would have had probable cause to arrest Mance" if there had not been an attempt to cancel the stolen vehicle report, "when police fail to correct their records, probable cause may no longer exist by the time an arrest is made." *Mance*, 82 Wn. App. at 543.

We further stated, "'[P]olice may not rely upon incorrect or incomplete information *when they . . . are at fault in permitting the records to remain uncorrected*.'" *Mance*, 82 Wn. App. at 543 (alterations in original) (quoting 2 Wayne LaFave, *Search and Seizure*, § 3.5(d), at 272 (3rd

6

ed. 1996)). We also commented that "'[i]f we impute to the arresting officer the collective knowledge of law enforcement agencies for the purpose of establishing probable cause, we must also charge him with knowledge of information exonerating a suspect formerly wanted in connection with a crime.'" *Mance*, 82 Wn. App. at 543 (quoting *People v. Ramirez*, 34 Cal. 3d 541, 547, 194 Cal. Rptr. 454, 668 P.2d 761 (1983)). Because the State failed to offer a reasonable explanation for the delay in updating the stolen vehicle report, we held that the officers lacked probable cause to arrest Mance. *Mance*, 82 Wn. App. at 544-45.

Here, as in *Mance*, an attempt to update the WACIC database information shortly before the stop failed and, at the suppression hearing, the State did not offer any explanation for the delay in updating the database. Although Deputy Brown testified that the WACIC database is commonly relied on by law enforcement and that officers provide the information to be entered into the database to dispatch or to records, he did not testify about the update process beyond who relayed the update information to whom. Nor did he testify about how quickly the database is usually updated, why the database was not updated in this instance, or the database's general reliability.[7]

---

[7] The State asserts that Deputy Brown's testimony "suggests the procedures utilized by WACIC are designed to enhance reliability and do 'actually work that way most of the time.'" Resp't's Br. at 11 (quoting Report of Proceedings (Apr. 12, 2017) at 9). The State mischaracterizes the record. First, there is no such quote in the record. Second, as described previously, Deputy Brown's testimony merely described how officers report information to be entered into the database. He did not testify about the process that is followed to ensure timely entry of this information or the overall accuracy or reliability of the database.

Thus, the State did not provide a reasonable explanation for why the database was not current when Pedersen was stopped.[8]

### III. STATE'S ARGUMENTS

The State argues that *Mance* is distinguishable because Mance was *arrested* for the offense that was based on the incorrect information and here Pedersen was only *detained* for an investigation based on the uncorrected information. This distinction is not relevant.

The State's argument is likely prompted by a comment at the end of *Mance*. We commented,

> We emphasize that our holding is limited by the stipulated facts stating that Mance's arrest occurred first in the sequence of events. If Mance had simply been detained for investigation and not arrested until after he spat out the cocaine, the analysis would be different and the arrest might have been lawful.

82 Wn. App. at 545 (footnote omitted). In an accompanying footnote, we commented that "[u]nder *Terry*, police may also conduct a brief warrantless detention to investigate a crime." *Mance*, 82 Wn. App. at 545 n.1.

This comment and footnote suggest that the limitations on the fellow officer rule might not apply when reasonable suspicion rather than probable cause is required. But this language in

---

[8] We note, as Division One of this court did in *O'Cain*, that the exception to the fellow officer rule is not intended to prevent officers from acting on information they receive from their dispatch without additional inquiry. 108 Wn. App. at 552-53. As the *O'Cain* court commented,

> They certainly may do so; indeed, effective law enforcement may very well require that they do so. [*Hensley*, 469 U.S. at 231-32]. And if they act in good faith, they likely have a defense to any civil suit arising from the seizure that may be brought against them personally. [*Hensley*, 469 U.S. at 232]. But the good faith of the officers executing the seizure does not relieve the State of its burden to prove that there was a factual basis for the stop—probable cause in the event of an arrest, and reasonable suspicion in the event of a *Terry* stop.

108 Wn. App. at 552-53.

*Mance* is conclusory dicta, and subsequent case law demonstrates that this limitation has been applied in the context of *Terry* stops. *See, e.g.*, *O'Cain*, 108 Wn. App. at 552-53.

Furthermore, although a *Terry* stop does not require probable cause, applying the exception to the fellow officer rule to a *Terry* stop promotes the same principles underlying the exception to the fellow officer rule discussed in *Mance*. The requirement that the State establish that the information the officers relied upon was valid protects a defendant from unlawful seizures and ensures that any intrusion on a defendant's right to privacy is justified. And requiring the State to provide an explanation for why information within the agency's knowledge was not current protects against intentional delay in maintaining accurate records. These same concerns exist regardless of whether an individual is arrested or merely detained for investigatory purposes. Additionally, regardless of whether an arrest or an investigatory detainment was at issue, it would be inconsistent to allow the knowledge of fellow officers to be imputed to another officer only if that knowledge supported the detainment.

The State also attempts to distinguish *O'Cain*. It argues that unlike here, in *O'Cain*, there was nothing in the record regarding the identity of the person who reported the stolen vehicle, so there was no way for the appellate court to examine that person's reliability and basis of knowledge or corroborate the reliability of the dispatch report. But *O'Cain* is relevant here because it confirms that the fellow officer rule and the limitations on the fellow officer rule drawn from *Mance*, apply to *Terry* stops, not just arrests. 108 Wn. App. at 548-52. The identity of the persons involved in reporting the stolen vehicle or the recovery of the vehicle are not at issue.

Finally, relying on *State v. Snapp*, 174 Wn.2d 177, 275 P.3d 289 (2012), and distinguishing *State v. Creed*, 179 Wn. App. 534, 319 P.3d 80 (2014), the State argues that the stop and detention

No. 50404-9-II

here were reasonable because Officer Lowrey's suspicion was not based on his own error and the information he knew gave him reasonable suspicion. Both *Snapp* and *Creed* address when an officer can rely on his or her own mistaken belief of fact to justify a *Terry* stop. *Snapp*, 174 Wn.2d at 198; *Creed*, 179 Wn. App. at 542-43. But neither *Creed* nor *Snapp* are relevant here because they do not address facts discerned through the fellow officer rule.

CONCLUSION

Because, as in *Mance*, the State failed to establish the reliability of the WACIC information, we hold that the trial court erred when it denied Pedersen's motion to suppress. Accordingly, we reverse the trial court's order denying Pedersen's motion to suppress, reverse his convictions, and remand for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

MAXA, C.J.

LEE, J.

10