[No. 44910. En Banc. November 9, 1978.]

THE STATE OF WASHINGTON, on the Relation of Grady V. Boutwell, Appellant, v. JAMES COUGHLIN, ET AL, Respondents.

836

John R. Muenster of *Seattle–King County Public Defender,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Michael T. Dijulio, Assistant Chief Criminal Deputy,* for respondents.

STAFFORD, J.—This is an appeal from an order denying Grady V. Boutwell's petition for writs of habeas corpus and prohibition. We affirm.

In 1964 appellant Boutwell was convicted of second-degree murder in Alabama. While serving his Alabama sentence, he was involved in two successful federal actions challenging the prison conditions in that state. In one he was deposed concerning medical conditions in the Alabama penal system. *See Newman v. Alabama,* 349 F. Supp. 278 (M.D. Ala. 1972), *aff'd in part,* 503 F.2d 1320 (5th Cir. 1974), *cert. denied,* 421 U.S. 948, 44 L. Ed. 2d 102, 95 S. Ct. 1680 (1975). He also is a member of a class of plaintiffs which successfully challenged confinement within the Alabama penal system as constituting cruel and unusual punishment in *Pugh v. Locke,* 406 F. Supp. 318 (M.D. Ala. 1976), *aff'd as modified sub nom. Newman v. Alabama,* 559

F.2d 283 (5th Cir. 1977), *cert. denied,* 438 U.S. 915, 57 L. Ed. 2d 1160, 98 S. Ct. 3144 (1978).

After serving 11 years of his Alabama sentence, Boutwell escaped. Following brief employment in New Mexico and Alaska, he attempted to enter Washington from Canada in January 1976. He was arrested and taken into custody on the basis of a federal warrant charging unlawful flight from Alabama. Since January 22, 1976, Boutwell has been detained in King County jail.

In February 1976, the Governor of Alabama requested that Boutwell be extradited to Alabama as a fugitive from justice. In May 1976, Governor Evans issued a Governor's warrant of arrest and extradition directing Boutwell's delivery to the custody of the State of Alabama.

Boutwell petitioned for writs of habeas corpus and prohibition to prevent his delivery into the custody of the State of Alabama. On May 13, 1976, an order was entered temporarily restraining his delivery into the custody of the State of Alabama pending a hearing on his petition. The hearing, originally set for June 1976, was delayed until April 1977.

Prior to a hearing on his petition, Boutwell contacted the office of the Governor of this state as well as several officials in Alabama. The executive authorities of both states considered various arrangements under which Boutwell might be permitted to serve the remainder of his Alabama sentence in the custody of Washington authorities. Ultimately, no interstate custodial agreement was reached because the State of Alabama lacked statutory authority to enter into such an arrangement.

Pending the hearing, the term of office of Washington's Governor expired without his having recalled the Governor's warrant of arrest and extradition. To date the succeeding Governor has not recalled that warrant.

At the hearing Boutwell admitted his escape from custody in Alabama. He did not deny that (1) he was the person charged by Alabama; (2) he was a fugitive from that state; or (3) he was substantially charged with a crime

against the laws of Alabama. Primarily his testimony dwelt upon the degrading prison conditions extant during his confinement in the Alabama prison system.

Boutwell's evidence was not challenged. However, the Washington custodial authorities maintained that the trial court had no power to inquire into the merits of the petition once it ascertained that the Governor's warrant had been lawfully issued. In short, they argued that whether the prison conditions in Alabama constituted cruel and unusual punishment could not be considered by the trial court.

The trial court vacated the temporary restraining order and denied the petitions. Following Boutwell's motion for reconsideration, the trial court modified its original order by staying extradition until May 16, 1977. Thereafter Boutwell appealed the modified order.[1] The sole issue here is the extent of judicial review available in a habeas corpus proceeding incident to extradition. Interstate rendition, or extradition, is essentially a federal matter. The duty of the state is prescribed in article 4, section 2, clause 2 of the United States Constitution:

> A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime.

Constitutionally, the power to demand an alleged fugitive and the duty to deliver him is lodged exclusively with the executive authority of each state. *Kentucky v. Dennison,* 65 U.S. (24 How.) 66, 16 L. Ed. 717 (1860). Neither the federal extradition clause nor federal legislation implementing it contain any procedure whereby the executive authority's extradition duty may be judicially compelled or reviewed. *See Appleyard v. Massachusetts,* 203 U.S. 222, 51 L. Ed. 161, 27 S. Ct. 122 (1906); *Taylor v.*

---

[1]Pending his appeal, Boutwell unsuccessfully sought an additional stay of extradition from this court. Appellant thereafter filed a petition for habeas corpus in the United States District Court for the Western District of Washington, which stayed extradition pending our resolution of the issues of Boutwell's appeal.

*Taintor,* 83 U.S. (16 Wall.) 366, 21 L. Ed. 287 (1872); *Kentucky v. Dennison, supra.* The very purpose of the clause is to insure the "prompt and efficient administration of the criminal laws of the several States". *Appleyard v. Massachusetts, supra* at 227. The executive authority's "duty" is thus a moral one, the performance of which depends upon the "fidelity of the State Executive to the compact entered into with the other States" in forming the union. *Kentucky v. Dennison, supra* at 109. With these guidelines in mind, we turn to the extradition procedures of this state.

Extradition is governed by RCW 10.88 which establishes a summary inter–executive procedure to insure the speedy rendition of criminals from the asylum state to the demanding state. *Vetsch v. Sheriff of Spokane County,* 14 Wn. App. 971, 974, 546 P.2d 927 (1976). *See also* 11 U.L.A., Uniform Criminal Extradition Act § 2 (1974). According to RCW 10.88 and pursuant to the requirements of the extradition clause, the authority to arrest an alleged fugitive and deliver him to a demanding state resides with the Governor. RCW 10.88.210 provides:

> the *governor of this state may in his discretion* have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state.

(Italics ours.) Thus, the Governor's authority to arrest and deliver the fugitive is discretionary, depending solely upon that executive's fidelity to the compact entered with the other states in the formation of our union of states. *See also Kentucky v. Dennison, supra.*

Although our summary extradition procedure operates exclusively between governors, the alleged fugitive is not without recourse. Under RCW 10.88.290, the fugitive may test the validity of his arrest by petitioning for a writ of habeas corpus. However, at the hearing on the petition and in accordance with the summary *executive* nature of extradition proceedings judicial inquiry is limited.

We discussed the relevant inquiry in such proceedings in *In re Summers,* 40 Wn.2d 419, 420, 243 P.2d 494 (1952), wherein we said:

> Relator does not contend that the extradition papers are not in order. The governor of this state has issued a warrant of rendition upon them. His discretion in this regard is absolute, and his action is subject to judicial review only to see that the prerequisites to extradition are met. These are that the person sought to be extra-dited (1) is substantially charged with a crime against the laws of the demanding state, and (2) is a fugitive from justice.

*In re Wheeler,* 46 Wn.2d 277, 280 P.2d 673 (1955); *In re Varona,* 38 Wn.2d 833, 232 P.2d 923 (1951); *In re Wallace,* 38 Wn.2d 67, 227 P.2d 737 (1951). *See also In re Jeffries,* 15 Wn. App. 302, 548 P.2d 594, *review denied,* 87 Wn.2d 1009 (1976).

In the instant case Boutwell does not contend that he is not substantially charged with a crime against the laws of the State of Alabama. He does not deny that he is a fugitive from justice, or assert that he is not the person named in the Governor's warrant. Rather, he maintains that *further* confinement in the Alabama penal system will constitute cruel and unusual punishment. Thus, he asserts we should inquire into his allegations in this habeas corpus proceeding. In short, Boutwell asks us to review the Governor's discretionary act and recall the Governor's warrant. We must decline.

We have previously considered and rejected the same argument. *In re Wallace, supra.* In *Wallace,* the petitioner contended that further confinement in Florida would constitute cruel and unusual punishment and thus our courts should grant a writ of habeas corpus. There, as here, no challenge was made to the extradition papers. We said at pages 68–69:

> It is not contended that the extradition papers are not in order, but appellant seems to base his position on the ground that the courts of the asylum state can review the

penal system of Florida and determine how the governor should exercise his discretion.

The reason for the issuance of the warrant by the governor is not a proper subject of judicial inquiry. . . . After the above prerequisites are met, the governor's discretion is absolute. Nor can the courts of the asylum state determine the constitutional validity of phases of penal action by the state of Florida in respect to the fugitive. *Johnson v. Matthews,* 182 F. (2d) 677. Since the regularity of the proceedings leading to the governor's action is not questioned, there is nothing here for this court to review.

Our refusal to consider Boutwell's argument is also required by the extradition clause of the United States Constitution. *Sweeney v. Woodall,* 344 U.S. 86, 97 L. Ed. 114, 73 S. Ct. 139 (1952). As the court said in *Sweeney* at pages 89–90:

The scheme of interstate rendition, as set forth in both the Constitution and the statutes which Congress has enacted to implement the Constitution, contemplates the prompt return of a fugitive from justice as soon as the state from which he fled demands him; these provisions do not contemplate an appearance by Alabama in respondent's asylum to defend against the claimed abuses of its prison system. Considerations fundamental to our federal system require that the prisoner test the claimed unconstitutionality of his treatment by Alabama in the courts of that State.

(Footnotes omitted.) *See also Johnson v. Matthews,* 182 F.2d 677, 679–80 (D.D.C. 1950), *cert. denied,* 340 U.S. 828, 95 L. Ed. 608, 71 S. Ct. 65 (1950).

We are not convinced a different result is required by *Sweeney*'s suggestion that the asylum court may inquire into the merits of a petition if the petitioner can show that relief would be unobtainable from the courts of the demanding state. The record does not support Boutwell's assertion that relief is unobtainable in Alabama.

While the record indicates that Boutwell did not see his trial counsel during confinement in Alabama, there is no

indication that he requested the assistance of counsel. Indigent services are alleged to be scarce in Alabama, but the record clearly demonstrates that they are available. In fact, Boutwell has had the benefit of indigent legal services in two federal actions challenging the prison conditions in that state. It is of interest that in neither action was habeas corpus relief sought.

Boutwell has made no effort to secure *any* current information concerning Alabama prison conditions. He relies instead upon conditions as they existed during his prior confinement. This record contains no indication that conditions existing over 3 years ago still obtain. The report ordered by the court in *Pugh v. Locke, supra,* has not been submitted in the instant case. That report was to itemize Alabama's progress toward correcting deficiencies noted by the federal court. In this respect we note with some interest that in *Newman v. Alabama,* 559 F.2d 283 (5th Cir. 1977) the Fifth Circuit indicated that the Alabama state legislature *has* provided new funding for prison facilities since the federal district court order in *Pugh v. Locke, supra.*

On this record, we cannot say relief is unobtainable from the courts of the demanding state. At best, Boutwell's evidence shows the prison conditions were deficient *3 years ago.* Boutwell has resorted to the same "self–help" remedy of escape condemned in *Sweeney.* We are not convinced this remedy should "affect the authority of the Alabama courts to determine the validity of his imprisonment in Alabama." *Sweeney v. Woodall, supra* at 89.

Finally, we are not persuaded that the *Sweeney* rule of "limited judicial inquiry" has been eroded by recent decisions of the United States Supreme Court. *Strait v. Laird,* 406 U.S. 341, 32 L. Ed. 2d 141, 92 S. Ct. 1693 (1972) is not in point. *Strait* is concerned with the term "custodian" as used in the federal habeas corpus statute and deals with Army duty assignments, *not* state extradition matters. Also neither *Nelson v. George,* 399 U.S. 224, 26 L. Ed. 2d 578, 90 S. Ct. 1963 (1970) nor *Braden v. 30th Jud. Cir. Ct.,* 410

U.S. 484, 35 L. Ed. 2d 443, 93 S. Ct. 1123 (1973) are applicable. Both deal with *interstate detainers*. Even if we were to agree that these cases apply in an extradition setting, they are inapposite. Insofar as relevant here, both concern the *effect* to be given an *out–of–state detainer* in the *forum* state. We are here concerned with the appropriate judicial inquiry involving the *forum* governor's warrant of arrest and inquiry in the *forum* state.

Since Boutwell has presented no challenge to the validity of the extradition papers and makes no showing that relief is unobtainable from the Alabama courts, we affirm the trial court's determination that it lacked jurisdiction to inquire into the merits of his petition for writs of habeas corpus and prohibition.

WRIGHT, C.J., and ROSELLINI, HAMILTON, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

Reconsideration denied December 28, 1978.