72 P.3d 200 (2003)
117 Wash.App. 647
STATE of Washington, Appellant,
v.
Charles Alex NALL, Respondent.
No. 28477-4-II.
Court of Appeals of Washington, Division 2.
June 24, 2003.
*201 John Gregory Prentiss, Clallam County Prosecutors Office, Port Angeles, WA, for Appellant.
Bruce J. Finlay, Attorney at Law, Shelton, WA, for Respondent.
ARMSTRONG, J.
The State appeals an order suppressing drug evidence seized when officers arrested Charles A. Nall on an out-of-state warrant. The trial court suppressed the evidence because the out-of-state warrant turned out to be invalid. The State argues that the officers had statutory authority to arrest without a warrant because they acted upon reasonable information that Nall faced felony charges in another state. We disagree. The Washington state officers were bound by what the out-of-state authorities knew or should have known. Accordingly, we affirm.

FACTS
The Multnomah County (Oregon) Sheriff's Office faxed the Clallam County Sheriff information indicating that they had an active arrest warrant for Charles Nall. The Oregon authorities wanted Nall for violating a condition of his community supervision. The faxed message requested that the Clallam County deputies serve the warrant. A Clallam County deputy asked central communications to verify the warrant over the phone and it did.
Based on the Oregon warrant, Clallam County deputies arrested Nall at his residence. During a search incident to the arrest, police discovered drugs and drug paraphernalia.
Nall moved to suppress the drug evidence. At the suppression hearing, the evidence showed that Nall had a felony conviction in Oregon and had violated his probation, prompting the Oregon court to revoke it. Three months later, a "Local Supervisory Authority,"[1] not the Oregon court, issued a warrant for Nall based on his alleged community supervision violations. Two months later, Nall appeared in the Oregon court on an unrelated matter. During these proceedings, the court terminated Nall's probation, but because of a clerical mistake, the administrative agency that issued the warrant failed to quash it.
The trial court ruled that the Oregon warrant was invalid and did not provide probable cause to arrest Nall.

ANALYSIS
The State relies on RCW 10.88.330(1), which provides, in relevant part:

*202 The arrest of a person may be lawfully made also by any peace officer or a private person, without a warrant upon reasonable information that the accused stands charged in the courts of a state with a crime punishable by death or imprisonment for a term exceeding one year.
The State argues that the Oregon warrant, even though invalid, provided reasonable information for the Clallam officers to arrest Nall. In a related argument, the State maintains that RCW 10.88.330(1) provides a "good faith" exception, allowing officers to arrest without a warrant if they have "reasonable information" that the person is charged with a felony in another state.
In deciding whether police officers have probable cause to arrest the defendant, we take into account the collective knowledge of the arresting officers. State v. Stebbins, 47 Wash.App. 482, 484, 735 P.2d 1353 (1987). Thus, the "fellow officer" rule allows the arresting officer to rely on what other officers or police agencies know. State v. Mance, 82 Wash.App. 539, 542, 918 P.2d 527 (1996). For example, a police department "hot sheet" bulletin may justify an arrest if the police agency issuing the bulletin has sufficient information to provide probable cause. Mance, 82 Wash.App. at 542, 918 P.2d 527. But the arresting officer is also limited by any deficiencies in what the issuing police agency knows. Accordingly, if the issuing agency lacks probable cause because its information is out of date, the arresting officer also lacks probable cause. Mance, 82 Wash.App. at 542, 918 P.2d 527.
In Mance, the defendant purchased a car from a dealer. Mance, 82 Wash.App. at 540, 918 P.2d 527. Because of a misunderstanding between the dealer and the defendant, the dealer reported the car stolen. Mance, 82 Wash.App. at 540-41, 918 P.2d 527. The misunderstanding was then cleared up, and the dealer canceled the stolen vehicle report. Mance, 82 Wash.App. at 541, 918 P.2d 527. But the police neglected to cancel the stolen vehicle report and later arrested Mance for possessing a stolen car. Mance, 82 Wash.App. at 541, 918 P.2d 527. During the subsequent search incident to arrest, they discovered crack cocaine. Mance, 82 Wash. App. at 541, 918 P.2d 527.
Employing the "fellow officer" rule, we held that the arresting officers were bound by what the agency issuing the hot sheet knew or should have known about its validity. See Mance, 82 Wash.App. at 542-43, 918 P.2d 527. And because the State offered no reasonable explanation for the delay in canceling the stolen vehicle report, the arresting officers lacked probable cause to arrest the defendant. Mance, 82 Wash.App. at 544-45, 918 P.2d 527.
Here, there is no question but that the Oregon warrant was invalid. It was issued by a supervising authority for Nall's alleged community supervision violations. More than a month later, Nall appeared in the Oregon court and the judge terminated his probation. The arrest warrant should have been quashed at that time. It was not, and more than five months later, the Clallam officers used the warrant to arrest Nall. As in Mance, the State offered no explanation for the delay in canceling the warrant. Indeed, the State concedes that the warrant should have been cancelled. We hold that under the "fellow officer" rule, the Clallam officers were bound by what the Oregon authorities knew or should have knownthat the warrant was invalid. Thus, the Clallam officers lacked probable cause to arrest Nall.
We also reject the State's argument that RCW 10.88.330 creates a good faith exception to the probable cause requirement. Article I, section 7 of the Washington Constitution, unlike the federal constitution, explicitly protects the privacy rights of Washington citizens. State v. White, 97 Wash.2d 92, 110, 640 P.2d 1061 (1982). Moreover, article I, section 7 affords individuals greater protection than does the Fourth Amendment. State v. Stroud, 106 Wash.2d 144, 148, 720 P.2d 436 (1986). As a result, we have yet to recognize a "good faith" exception to the valid warrant requirement. State v. Werner, 129 Wash.2d 485, 496 n. 4, 918 P.2d 916 (1996); State v. Riley, 121 Wash.2d 22, 30, 846 P.2d 1365 (1993); State v. Canady, 116 Wash.2d 853, 857-58, *203 809 P.2d 203 (1991).[2] But even if we did adopt the federal good faith standard as articulated by this court in Werner, the Oregon court did not issue the warrant here. State v. Werner, 79 Wash.App. 872, 883-84, 906 P.2d 342 (exclusionary rule generally applies to law enforcement, but not judges), reversed on other grounds, 129 Wash.2d 485, 918 P.2d 916 (1996). Instead, an administrative law enforcement agency, the parole and probation office, issued the arrest warrant. Thus, the administrative agency, not the court, was responsible for quashing the warrant. Accordingly, the State's good faith argument fails.
Finally, the State suggests that the Oregon arrest warrant was voidable, rather than void; thus, according to the State, the warrant was still technically active and enforceable. The State, however, cites no authority in support of the argument. And because the notion runs counter to the "fellow officer" rule, we decline to consider it.
The dissent argues that under the Uniform Criminal Extradition Act, chapter 10.88 RCW, the Clallam officers not only had the right but the duty to arrest Nall. In making this argument, the dissent misapplies the Uniform Act.
The power to demand an alleged fugitive and the duty to deliver him is lodged exclusively with the executive authority of each state. State ex rel. Boutwell v. Coughlin, 90 Wash.2d 835, 838, 586 P.2d 1145 (1978). Washington's governor may issue a warrant for the arrest of a fugitive from another state upon request of the other state's governor. RCW 10.88.210. If the request is for a convicted fugitive who has violated probation, as here, the demanding governor must state that the fugitive has broken the terms of probation. RCW 10.88.220. If our governor is satisfied that the demand should be complied with, he "shall sign a warrant of arrest" for the fugitive. RCW 10.88.260.
The Uniform Act also allows a Washington court to issue a warrant for a fugitive's arrest, but only upon the "oath of any credible person before" the issuing judge or magistrate. RCW 10.88.320. And the Act allows law enforcement officers to arrest a person without a warrant if officers have probable cause to believe the person is a fugitive and stands charged with a crime punishable by death or imprisonment for a term exceeding one year. RCW 10.88.330(1).
Nall was not arrested upon a governor's warrant because Oregon's governor had not requested extradition.[3] Thus, while the federal Extradition Clause creates a mandatory duty to deliver fugitives upon proper demand, no demand had been made for Nall under chapter 10.88 RCW. See Boutwell, 90 Wash.2d at 839, 586 P.2d 1145 (summary extradition procedures operates exclusively between governors).
Nor was Nall arrested on a warrant issued by a Washington judge or magistrate. Thus, the Clallam officers had authority to arrest based only on RCW 10.88.330(1). And this allowed them to arrest Nall only upon "reasonable information." RCW 10.88.330(1). Because the only information the Clallam officers had was the fact that the Multnomah sheriff had a warrant for Nall's arrest, the question is whether that was reasonable information in light of the undisputed fact that the Oregon warrant was bad.
Finally, the dissent questions whether Mance applies because it involved only Washington officers. But if the Oregon warrant was invalid in Oregon, it surely did not become valid and thereby provide "reasonable information" simply by faxing it across a state line. In short, the Clallam officers *204 were entitled to rely upon Oregon law enforcement officials to provide "reasonable information" (probable cause) for the arrest. But they were not entitled to take the good without also accepting the bad. The Oregon warrant was invalid and the trial court did not error in suppressing evidence seized during Nall's arrest.
Affirmed.
I concur: MORGAN, J.
HUNT, C.J.
The majority holds that a search incident to arrest under RCW 10.88.330(1) on a facially valid, out-of-state warrant violates a defendant's Fourth Amendment rights, and that the exclusionary rule must operate to suppress evidence seized if later information reveals that the issuing state made a clerical error in failing to quash the warrant. I respectfully dissent.

I. SEARCH INCIDENT TO LAWFUL ARREST

A. FEDERAL INTERSTATE EXTRADITION TEST
Washington has adopted the Uniform Criminal Extradition Act. RCW 10.88. As we recently held in Stalter v. State, 113 Wash.App. 1, 16, 51 P.3d 837 (2002),[4] where a defendant is arrested in Washington on a warrant issued in another state, the Uniform Criminal Extradition Act, RCW 10.88, governs the arrest process.
The [federal] Extradition Clause creates a mandatory duty to deliver up fugitives upon proper demand with no discretion residing in the governor or courts of the asylum state; the federal courts have the power to compel state governors to extradite fugitives. Puerto Rico v. Branstad, 483 U.S. 219, [226-28] 107 S.Ct. 2802, 97 L.Ed.2d 187 (1987). The clause provides:
A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime.
U.S. CONST. art. [IV], § 2, cl. 2. The purpose of the Extradition Clause is `to preclude any state from becoming a sanctuary for fugitives from justice of another state and thus `balkanize' the administration of criminal justice among the several states.' [Michigan v.] Doran, [439 U.S. 282,] 287, [99 S.Ct. 530, 58 L.Ed.2d 521 (1978) ]; see In re Anthony, 198 Wash. 106, 110, 87 P.2d 302 (1939).
White v. King County, 109 Wash.2d 777, 780, 748 P.2d 616 (1988) (emphasis added).
In a companion case to Stalter, Brooks was arrested in Washington State on a warrant issued by North Carolina, which wanted to extradite him. He claimed misidentification and did not waive extradition. Pierce County held him in custody for three days until they learned that Brooks was not the same person named in the warrant. Brooks sued for false imprisonment, contending that the county should have been more diligent in checking his misidentification claim. We noted that for purposes of a hearing to challenge extradition,
The court is limited to deciding:
(a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. White, 109 Wash.2d at 781 [748 P.2d 616] (quoting Michigan v. Doran, 439 U.S. 282, 289, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978)).
Stalter, 113 Wash.App. at 17, n. 5, 51 P.3d 837.
Here, as the majority notes, Oregon's governor had not yet requested extradition and, therefore, there was no hearing to challenge extradition at the time of Nall's arrest. Nonetheless, all four extradition tests were met. The Clallam County Sheriff's Office verified that the Oregon arrest warrant was valid on its face, that Nall was the person Oregon sought, and that he was a fugitive. As the majority here acknowledge, Nall had *205 been charged, convicted, and sentenced for a felony; and he had violated his probation, which had been revoked.[5] If these facts are sufficient to justify extradition under RCW 10.88, then they should also be sufficient to establish "reasonable information that the accused stands charged in the courts of a state" for purposes of lawful arrest under RCW 10.88. 330(1).
Therefore, I would hold that the Clallam County Sheriff's Office acted lawfully in arresting Nall on the Oregon warrant. That the warrant later turned out to have been mistakenly kept "alive" in Oregon's records has no bearing on the lawfulness of the local sheriff's actions here at the time of Nall's arrest. As I explain, infra, I respectfully disagree with the majority's application of the "fellow officer rule" across state lines under the circumstances of this case.

B. OUT-OF-STATE WARRANT AS REASONABLE BASIS FOR ARREST
As the majority here acknowledges, RCW 10.88.330(1) allows the arrest of a person without a warrant if the arresting officer has "reasonable information that the accused stands charged in [another state] with a crime punishable by death or imprisonment for a term exceeding one year." (Emphasis added.) I agree with the majority that the issue here is whether the information that the Clallam County officers received from Oregon was such "reasonable information." But I disagree with the majority's answer.
Although arguably applying a somewhat higher standard than the "reasonable information" required under RCW 10.88.330(1), well settled case law from both our state and national Supreme Courts equate "reasonable ground" necessary for extradition with "probable cause" necessary for issuance of a warrant by the extradition-seeking state; these cases offer insights here. In states such as California, for example, an out-of-state arrest warrant can issue only upon a judicial finding of probable cause to arrest; therefore, probable cause can be inferred from a felony warrant attached to an extradition request, even if the warrant does not expressly state that probable cause has been found. White, 109 Wash.2d at 786, 748 P.2d 616.
In Michigan v. Doran, [439 U.S. 282, 289, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978) ] the United States Supreme Court ... said that the Extradition Clause `never contemplated that the asylum state was to conduct the kind of preliminary inquiry traditionally intervening between the initial arrest and trial.' Doran, [439 U.S.] at 288 [99 S.Ct. 530]. The Court reasoned that the courts of the asylum state are bound to accept the demanding state's judicial determination because the demanding state's proceedings are clothed with a presumption of regularity, and the Extradition Clause and established principles of comity support the conclusion that the courts of the asylum state are without power to review a determination of probable cause in the demanding state. Doran, [439 U.S.] at 290 [99 S.Ct. 530]. White, 109 Wash.2d at 786, 748 P.2d 616 (emphasis added).
Here, Washington's Clallam County Sheriff received a fax from Oregon's Multnomah County Sheriff indicating that Oregon had an active arrest warrant for Nall and asking Clallam County to arrest Nall. That (1) Oregon allows non-judicial issuance of an arrest warrant for parole or post-prison supervision violations, (2) neither the Oregon court nor the issuing authority quashed Nall's probation-violation arrest warrant after the court terminated, and (3) this was a mistake, do not justify departure from the Supreme Court's holdings in California v. Superior Court, 482 U.S. 400, 411, 107 S.Ct. 2433, 96 L.Ed.2d 332 (1987), and Michigan v. Doran, 439 U.S. 282, 289-90, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978). Applying these holdings here means that Clallam County was neither obligated nor authorized to inquire further into the Oregon procedures once it verified the existence of Nall's Oregon felony arrest warrant.[6]Michigan, 439 U.S. at 289-90, *206 99 S.Ct. 530; California, 482 U.S. at 411, 107 S.Ct. 2433.
Although based on facts involving the judicial issuance of an out-of-state warrant, the rule of Michigan v. Doran would be eviscerated if Washington, as the asylum state, were required to investigate another state's warrant-issuing procedure on a case-by-case basis before acting to arrest on the issuing state's warrant. According to the United States Supreme Court,
If more were required it would impose upon courts ... the duty of a critical examination of the laws of States with whose jurisprudence and criminal procedure they can have only a general acquaintance. Such a duty would be an intolerable burden, certain to lead to errors in decision, irritable to the just pride of the States and fruitful of miscarriages of justice. The duty ought not be assumed unless it is plainly required by the Constitution, and, in our opinion, there is nothing in the letter or the spirit of that instrument which requires or permits its performance.
California, 482 U.S. at 411, 107 S.Ct. 2433 (quoting Pierce v. Creecy, 210 U.S. 387, 405, 28 S.Ct. 714, 52 L.Ed. 1113 (1908)).

II. EXCLUSIONARY RULE NOT APPLICABLE

A. FEDERAL PREEMPTIONINTERSTATE EXTRADITION
The majority holds that the Clallam County Sheriff was bound under the "fellow officer rule" by what Oregon Police knew or should have known about the warrant's invalidity and, therefore, the exclusionary rule should be applied to suppress evidence found during the search incident to Nall's arrest. In support of its position, the majority cites State v. Mance, 82 Wash.App. 539, 542, 918 P.2d 527 (1996). But Mance is distinguishable.
First, all law enforcement groups involved in Mance were in and from the State of Washington. Here, however, the knowledge that the majority attempts to attribute to the Clallam County Sheriff came from Oregon law enforcement. Second, Mance neither involved nor addressed an arrest on an out-of-state warrant.

B. SEARCH INCIDENT TO ARREST
Clallam County's arrest of Nall was lawful, regardless of Oregon's later invalidation of the warrant. And to effectuate Nall's arrest, the Washington officers had an obligation to search Nall incident to arrest for officer and fellow inmate safety. Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. O'Neill, 148 Wash.2d 564, 585, 62 P.3d 489 (2003) (citing State v. Parker, 139 Wash.2d 486, 496-97, 987 P.2d 73 (1999)). It would be unreasonably dangerous to prohibit a search incident to arrest on an out-of-state warrant when Washington law enforcement will be responsible for an arrestee until transfer to the out-of-state authorities.
It would be similarly unreasonable to require arresting officers in the State of Washington to ignore weapons and contraband encountered during a search incident to arrest; moreover, it would serve no legitimate private or public purpose. I would hold that the officers lawfully seized drug evidence during the search incident to Nall's lawful arrest.
Accordingly, I would reverse the trial court's order suppressing evidence seized during Nall's arrest.
NOTES
[1] Oregon law "Local Supervisory Authorities" to issue arrest warrants for parole or post-prison supervision violations. ORS 144.340(2)(b). The Oregon legislature has defined "Local Supervisory Authority" as the "state or local corrections agency or official designated ... by that county's board of county commissioners or county court" to operate corrections supervision services or custodial facilities. ORS 144.087. In Multnomah County, the sheriff's office, and the Adult Community Justice Department are the county's supervisory authority. Thus, an arrest warrant issued by either Adult Community Justice or the sheriff's office is not reviewed by the court but instead by the agency prior to issuance. ORS 144.350-360.
[2] Compare with United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); Massachusetts v. Sheppard, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984) (federal good faith exception).
[3] The dissent relies on Michigan v. Doran, 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978). But in Doran, the defendant challenged an extradition request by Arizona's governor of Michigan's governor. The Supreme Court held that "once the governor of the asylum state has acted on a requisition for extradition based on the demanding state's judicial determination that probable cause existed, no further judicial inquiry may be had on that issue in the asylum state." Doran, 439 U.S. at 291, 99 S.Ct. 530. Here, we do not have a governor-to-governor request and, more importantly, no Oregon judge determined that probable cause existed for the warrant.
[4] Stalter was authored by Judge Seinfeld, with Judges Armstrong and Hunt concurring.
[5] See Majority at 202.
[6] Even so, before taking action, the Clallam County Sheriff called Oregon to verify the warrant by telephone. That the Clallam County officers did make further inquiries underscores the reasonableness of their actions.