# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50114-7-II |
| Respondent, | |
| vs. | UNPUBLISHED OPINION |
| JAYNE RENEE BLUNK, | |
| Appellant. | |

MAXA, C.J. – Jayne Blunk appeals her conviction of unlawful possession of

methamphetamine.  A police officer discovered the methamphetamine after arresting Blunk for

violating a protection order that Blunk claims was invalid.

We hold that (1) the police officer had probable cause to arrest Blunk and therefore the

evidence was not the product of an illegal search; (2) the trial court properly admitted Blunk's

pre-arrest statements; (3) Blunk's waiver of her right to a jury trial was knowing, intelligent, and

voluntary; and (4) her agreement to stipulate to facts at trial was knowing, intelligent, and

voluntary.  Accordingly, we affirm Blunk's conviction.

## FACTS

On November 8, 2016, the Grays Harbor County District Court entered an Order for

Protection–Harassment restraining Blunk from having any contact with Julie Roberts and

restraining Blunk from entering or being within an unspecified distance of Roberts's residence in

Aberdeen.  On November 22, the Grays Harbor County Superior Court entered an Order for

Protection–Vulnerable Adult restraining Blunk from having any contact with Robert Schlienz

and prohibiting Blunk from coming within or knowingly remaining within 100 feet of Schlienz's

residence at the same address as Roberts's address.

On December 1, Roberts called 911 and reported that Blunk might be going to a house

that was adjacent to her and Schlienz's residence.  Aberdeen Police Officer Ron Bradbury

contacted Roberts and told her to call again if Blunk showed up.  Bradbury then went into the

department records section and found the November 8 and November 22 orders.

Roberts called again later that day and reported that Blunk was at an adjacent house.

Bradbury went to the area and saw Blunk exiting a house that was within 100 feet of Schlienz's

residence.  Bradbury advised Blunk that he was there to investigate the two protection orders,

that she was not to be at the location, and that under the second order she was not to be within

100 feet of Schlienz's residence.  Blunk replied that she had forgotten that there were two orders.

Bradbury contacted the records department and again confirmed both orders.  Bradbury

then arrested Blunk and searched her.  He found a container holding what appeared to be

methamphetamine.  The State charged Blunk with unlawful possession of methamphetamine.

The trial court held a CrR 3.5 status hearing in which it asked Blunk whether she had

made any custodial statements:

THE COURT: Were there custodial statements made?

[DEFENSE COUNSEL]: Your Honor, there was one, apparently volunteered, very
brief statement, and there was a custodial statement, but it doesn't appear that it
was in response to any questioning, so we are not contesting that.
. . .

THE COURT: Ms. Blunk . . . I am being advised by your attorney that any statements you made to the police in this case were volunteered by you, that is, that you didn't make statements in response to specific interrogation by the police; is that correct?

[BLUNK]: That's correct.

Report of Proceedings (Jan. 9, 2017) at 2. The court held that the statement was admissible because it was made before the arrest, was voluntary, and was not coerced.

Blunk also filed a motion to suppress all evidence found during her arrest, arguing that Officer Bradbury lacked probable cause to arrest her because she was never served with and had not signed the November 22 order requiring her to stay 100 feet away from Schlienz's residence. Bradbury testified to what transpired as set out above. And Blunk testified that she was aware there were two orders.

As to the legality of her arrest, the trial court stated:

I conclude that a reasonable person would believe that a violation of the vulnerable adult protection order was committed by [ ] Blunk because she admitted she was aware of the order, the order was "confirmed" as valid, and she was within one hundred feet of the protected person's residence. Her signature on the order or personal service of the order on [ ] Blunk is not required to establish probable cause to believe she had knowledge of the order.

Clerk's Papers (CP) at 21. Therefore, the court denied the motion to suppress.

At a later hearing, Blunk asked the court to allow her to waive her right to a jury trial and she presented a signed jury trial waiver. The trial court carefully questioned her about the waiver, and she confirmed that she wanted to waive her right to a jury trial. Blunk also stated that she understood her right to a jury trial and that she agreed that her case could be tried by a judge without a jury. Defense counsel stated that he had reviewed the right to a jury trial with her and that he believed that she had made a knowing, intelligent, and voluntary waiver of that right.

3

At the bench trial, the parties submitted a stipulation identifying a number of agreed facts that the court would use in determining Blunk's guilt. The document stated that Blunk made the stipulation freely and voluntarily, that her attorney had explained it, and that she understood it. Blunk also presented a signed document entitled, "Statement of Defendant on Stipulation to Facts." CP at 26. The document stated that Blunk freely and voluntarily submitted her case to the court for a trial on the record.

When the trial court first asked Blunk about the stipulation and statement on stipulation, she stated that she had not read them. The trial court then stopped the hearing to give Blunk time to review the documents with defense counsel. When the hearing resumed, the trial court asked Blunk about the stipulation and she stated that she fully understood.

When the trial court asked Blunk if she had any questions about what a stipulation means, she expressed confusion and defense counsel interjected that she had some mental disabilities. Blunk ultimately stated that she signed the documents voluntarily and did not have any questions. After a series of questions focusing on whether Blunk understood, the court accepted the stipulation and found that it was knowingly, intelligently, and voluntarily made.

The trial court found Blunk guilty of unlawful possession of methamphetamine. Blunk appeals her conviction.

## ANALYSIS

A.   PROBABLE CAUSE TO ARREST

Blunk argues that Officer Bradbury did not have probable cause to arrest her, and therefore the trial court erred in not suppressing the methamphetamine Bradbury found in a search incident to arrest. We disagree.

4

1.   Legal Principles

When reviewing an order on a suppression motion, we determine whether substantial evidence supports the trial court's findings of fact and whether the findings support the conclusions of law. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Evidence is substantial when it is enough to persuade a fair-minded person of the truth of the stated premise. *Id*. We treat unchallenged findings of fact as verities on appeal. *State v. Valdez*, 167 Wn.2d 761, 767, 224 P.3d 751 (2009). We review de novo the trial court's conclusions of law pertaining to the suppression of evidence. *Garvin*, 166 Wn.2d at 249.

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution prohibit warrantless searches unless one of the narrow exceptions to the warrant requirement applies. *State v. Rooney*, 190 Wn. App. 653, 658, 360 P.3d 913 (2015). The State has the burden of establishing an exception. *Id*. at 658-59.

One exception to the warrant requirement is a search incident to arrest. *State v. Brock*, 184 Wn.2d 148, 154, 355 P.3d 1118 (2015). But before an officer may search a person incident to arrest, that arrest must be lawful. *State v. Moore*, 161 Wn.2d 880, 885, 169 P.3d 469 (2007). The lawfulness of an arrest depends on whether there was probable cause to arrest. *Id*.

A law enforcement officer has probable cause to arrest if " 'the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed.' " *State v. Barron*, 170 Wn. App. 742, 750, 285 P.3d 231 (2012) (*quoting State v. Terrovona*, 105 Wn.2d 632, 643, 716 P.2d 295 (1986)). Whether probable cause exists depends on the totality of the facts and circumstances within the arresting officer's knowledge at

the time of the arrest. *Barron*, 170 Wn. App. at 750. For a misdemeanor, an officer may arrest a person without a warrant if they have reason to believe that he or she has committed a misdemeanor in the officer's presence. RCW 10.31.100.[1]

Under the "fellow officer" rule, we can rely on the knowledge of other officers or police agencies in determining that an arresting officer has probable cause to arrest. *State v. Nall*, 117 Wn. App. 647, 650, 72 P.3d 200 (2003). However, another police agency's knowledge also can negate probable cause if that agency knows of facts that would preclude having probable cause to arrest. *Id*. at 650-51.

    2.    Probable Cause Analysis

The protection orders here were issued under chapter 74.34 RCW. The punishment for violating such an order is set out in RCW 26.50.110(1)[2], which provides that violation of a protection order issued under chapter 74.34 RCW is a gross misdemeanor. RCW 26.50.110(2) states, "A peace officer shall arrest without a warrant and take into custody a person whom the peace officer has probable cause to believe has violated an order issued under . . . 74.34 RCW."

Blunk does not assign error to any of the trial court's findings of fact from the suppression hearing, making them verities on appeal. *Valdez*, 167 Wn.2d at 767. The trial court's unchallenged findings support its conclusion that Bradbury confirmed the validity of both protection orders. The November 22, 2016 order specifically prohibited Blunk from knowingly

---

[1] RCW 10.31.100 has been amended since the events of this case transpired. However, because these amendments do not materially affect the statutory language relied on by this court, we do not include the word "former" before RCW 10.31.100.

[2] RCW 26.50.110 has been amended since the events of this case transpired. However, because these amendments do not materially affect the statutory language relied on by this court, we do not include the word "former" before RCW 26.50.110.

coming within 100 feet of Schlienz's residence. Blunk told Bradbury that she had forgot there were two orders, showing her awareness of the November 22 order. And Blunk was closer than 100 feet from Schlienz's residence.

The trial court found that Bradbury did not know whether Blunk had been served with a copy of the November 22 order but did know that Blunk had not signed the order. Blunk argues that the order was invalid because she had not signed it nor was there proof of service on her. She contends that under the fellow officer rule, Bradbury was charged with the deficiencies in the order and therefore lacked probable cause to arrest her. She relies on *Nall*, 117 Wn. App. at 651, and *State v. Mance*, 82 Wn. App. 539, 542, 918 P.2d 527 (1996).

*Nall* and *Mance* involved arrests that lacked probable cause because officials other than the arresting officer knew that there was no basis for arresting the defendant. In *Nall*, police arrested the defendant based on a warrant issued by an agency that knew the warrant was invalid and should have been quashed. 117 Wn. App. at 649. The court held that the arresting officer was bound by the agency's knowledge that the warrant was invalid. *Id.* at 651. In *Mance*, police arrested the defendant for driving a stolen vehicle based on a police information sheet that listed the car as stolen even though the owner had cancelled the stolen vehicle report. 82 Wn. App. at 540-41. The court held that the arresting officer was bound by the police department's knowledge. *Id.* at 542-45.

This case is different than *Nall* and *Mance* because the November 22 protection order that Blunk was arrested for violating was valid. Therefore, there was no knowledge that would negate probable cause that could be imputed to Bradbury. Blunk emphasizes that Bradbury knew that she had not signed the protection order. But although the fact that Blunk had not been

served may be a defense to a charge of violating the order, that fact does not invalidate the order. *State v. George*, 160 Wn.2d 727, 744, 158 P.3d 1169 (2007) (proof of personal service is not an essential element of misdemeanor violation of a no contact order; instead, the State must show that the defendant knew the order existed). And Blunk made a statement before the arrest that showed that she was aware of both of the protection orders.

We hold that the trial court did not err in denying Blunk's motion to suppress.

B.    ADMISSION OF PRE-ARREST STATEMENT

Blunk argues that the trial court erred in failing to suppress her statement to Bradbury that she forgot there were two protection orders because the statement was made during a custodial interrogation without *Miranda*[3] warnings. We disagree.

*Miranda* warnings are required when a person in custody is subjected to interrogation. *State v. Mayer*, 184 Wn.2d 548, 556, 362 P.3d 745 (2015). But a person is in custody only if a reasonable person would have believed that the person was not free to leave. *State v. Flores*, 186 Wn.2d 506, 521, 379 P.3d 104 (2016). And incriminating statements that are not responsive to an officer's questioning are not products of interrogation. *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 685, 327 P.3d 660 (2014).

Bradbury testified that when he first saw Blunk, he explained that he was there to investigate the protection orders and that she was not supposed to be within 100 feet of the vulnerable adult's residence. At that point, Bradbury had not arrested Blunk and she clearly was not in custody. Blunk immediately responded that she forgot there were two orders. Blunk admitted to the trial court that her statement was voluntary and was not made in response to

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

interrogation. Therefore, we hold that the trial court did not err in not suppressing Blunk's statement to Bradbury.

C. JURY TRIAL WAIVER

Blunk argues that her waiver of her right to a jury trial was not knowing, intelligent, and voluntary. We disagree.

A criminal defendant may waive his or her constitutional right to a jury trial. *State v. Stegall*, 124 Wn.2d 719, 725, 881 P.2d 979 (1994). The State bears the burden of establishing the validity of such a waiver. *State v. Cham*, 165 Wn. App. 438, 447, 267 P.3d 528 (2011), *remanded on other gro*unds, 175 Wn.2d 1022 (2012). In order to uphold a jury trial waiver, the record must adequately establish that the defendant waived his or her right knowingly, intelligently, and voluntarily. *State v. Benitez*, 175 Wn. App. 116, 128, 302 P.3d 877 (2013). We review the validity of a defendant's jury trial waiver de novo. *Id*.

CrR 6.1(a) provides: "Cases required to be tried by jury shall be so tried unless the defendant files a written waiver of a jury trial, and has consent of the court." Although a written waiver is not determinative as to a defendant's jury trial waiver, a written waiver "is strong evidence that the defendant validly waived the jury trial right." *State v. Pierce*, 134 Wn. App. 763, 771, 142 P.3d 610 (2006). Defense counsel's representation to the court that the defendant's waiver is knowing, intelligent, and voluntary also is relevant evidence supporting the validity of a jury trial waiver. *Benitez*, 175 Wn. App. at 128. Unlike the waiver of other constitutional rights, a valid waiver of the jury trial right does not require an extensive colloquy on the record. *Id.* at 128-29. Instead, only a personal expression of waiver from the defendant is required. *Pierce*, 134 Wn. App. at 771.

Here, the record shows that Blunk's waiver of her right to a jury trial was valid. First, Blunk signed a written waiver. Second, defense counsel told the court that he reviewed the jury trial right with Blunk and believed that her waiver was knowing, intelligent, and voluntary. Third, the trial court had an extensive colloquy with Blunk about whether waiver was her decision, whether she understood her constitutional right to a jury trial, whether she had discussed the waiver with her attorney, and whether she had adequate time to think about it before making a decision. Fourth, defense counsel stated that he had discussed the waiver with Blunk. Therefore, we hold that Blunk made a knowing, intelligent, and voluntary decision to waive her constitutional right to a jury trial.

D.      AGREEMENT TO STIPULATE TO FACTS

Blunk argues that her decision to stipulate to the facts at trial was not knowing, intelligent, and voluntary. We disagree.

A stipulated facts trial is not the same as a guilty plea. *State v. Drum*, 168 Wn.2d 23, 39, 225 P.3d 237 (2010). In a stipulated facts trial, the trial court still must determine guilt or innocence and the State must prove guilt beyond a reasonable doubt. *State v. Mierz*, 127 Wn.2d 460, 469, 901 P.2d 286 (1995). As a result, the trial court is not required to provide the same safeguards for an agreement to trial based on stipulated facts as for a guilty plea. *Id.*

Blunk argues that the stipulation was invalid because she was confused, did not understand the proceedings, and thought she was pleading guilty. However, the trial court's colloquy with Blunk shows that despite some uncertainty, Blunk stated that she had reviewed the documents and understood what she was signing. And she understood that the trial court would make a determination of her guilt. After some confusion, Blunk stated that she signed the

documents voluntarily and did not have any questions. Therefore, we hold that Blunk made a knowing, intelligent, and voluntary decision to stipulate to facts at trial.

CONCLUSION

We affirm Blunk's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, C.J.

We concur:

JOHANSON, J.

SUTTON, J.