# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52824-0-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| MICHAEL ROBERT SCOTT, | |
| Appellant. | |

MAXA, J. – Michael Scott appeals his convictions of nine counts of second degree burglary and one count of bail jumping. He claims that his bail jumping conviction was improper because he was in jail in Oregon on a shoplifting charge at the time he was required to appear for a pretrial hearing, and therefore uncontrollable circumstances prevented him from appearing. In a statement of additional grounds (SAG), Scott makes several claims about the fairness of his trial.

The uncontrollable circumstances defense to bail jumping applies only if the defendant "did not contribute to the creation of such circumstances in reckless disregard of the requirement to appear or surrender." Former RCW 9A.76.170(2) (2001). We hold that a rational jury could determine that Scott's willful act of shoplifting did not satisfy this requirement, and therefore we

affirm his bail jumping conviction.[1] We also hold that Scott fails to identify any reversible error in his SAG, and therefore we affirm his burglary convictions.

FACTS

Between September 2013 and March 2014, someone broke into a battery storage cage at a store in Woodland on ten separate instances and stole over 200 used batteries. The store had video surveillance recordings of the burglaries, which they provided to Woodland police officer Brent Murray. Murray was able to identify a license plate number for a vehicle registered to Summer Smith. Vancouver police located the vehicle and arrested Smith and Scott.

The Stated charged Scott with 10 counts of second degree burglary. On February 16, 2017, Scott failed to appear at a readiness hearing. The State then filed an amended information adding one count of bail jumping.

Smith also was charged with 10 counts of second degree burglary. She pleaded guilty and agreed to testify against Scott in exchange for reduced jail time. Smith testified at trial that she committed the burglaries with Scott and identified him in the surveillance videos and still shots from those videos. Smith also testified that she and Scott had lived with her mother, Kelly Smith, for a year. Kelly Smith identified her daughter and Scott as the people in the surveillance videos.

Scott testified that he missed his February 16 court date because he was in jail after being arrested in Tualatin, Oregon on February 11 for shoplifting. He claimed that he did not think about the fact that he would miss his court date if he was arrested for shoplifting. He said that he shoplifted food because he was hungry. Scott also denied having committed the burglaries.

---

[1] Being incarcerated in another state may be a legitimate excuse for failing to appear at a court hearing, and we question the State's decision to bring a bail jumping charge against Scott. Nevertheless, we are constrained to follow RCW 9A.76.170(2).

The trial court instructed the jury that "[i]t is a defense to a charge of bail jumping that: (1) uncontrollable circumstances prevented the defendant from personally appearing in court; and (2) the defendant did not contribute to the creation of such circumstances in reckless disregard of the requirement to appear; and (3) the defendant appeared as soon as such circumstances ceased to exist." Clerk's Papers (CP) at 139. This instruction also contained the statutory definition of "uncontrollable circumstances."

The jury found Scott guilty of nine counts of second degree burglary and bail jumping. Scott appeals his bail jumping conviction and challenges his other convictions in his SAG.

## ANALYSIS

A.     BAIL JUMPING – UNCONTROLLABLE CIRCUMSTANCES

Scott argues that we must reverse his bail jumping conviction because being held in custody in another jurisdiction as a matter of law constitutes an uncontrollable circumstance that constitutes a defense to bail jumping. We disagree.

1.     Legal Principles

Former RCW 9A.76.170 defines bail jumping and the "uncontrollable circumstances" affirmative defense:

> (1) Any person having been released by court order or admitted to bail with knowledge of the requirement of a subsequent personal appearance before any court of this state, or of the requirement to report to a correctional facility for service of sentence, and who fails to appear or who fails to surrender for service of sentence as required is guilty of bail jumping.
>
> (2) It is an affirmative defense to a prosecution under this section that uncontrollable circumstances prevented the person from appearing or surrendering, and that *the person did not contribute to the creation of such circumstances in reckless disregard of the requirement to appear or surrender*, and that the person appeared or surrendered as soon as such circumstances ceased to exist.

(Emphasis added.)

RCW 9A.76.010(4) defines "uncontrollable circumstances":

"Uncontrollable circumstances" means an act of nature such as a flood, earthquake, or fire, or a medical condition that requires immediate hospitalization or treatment, or an act of a human being such as an automobile accident or threats of death, forcible sexual attack, or substantial bodily injury in the immediate future for which there is no time for a complaint to the authorities and no time or opportunity to resort to the courts.

This defense "relates to the defendant's inability to attend on the date of which she has been previously given notice." *State v. Fredrick*, 123 Wn. App. 347, 353, 97 P.3d 47 (2004).

In reviewing a jury's rejection of an affirmative defense, we determine whether, "considering the evidence in the light most favorable to the State, a rational trier of fact could have found that the defendant failed to prove the defense by a preponderance of the evidence." *State v. Lively,* 130 Wn.2d 1, 17, 921 P.2d 1035 (1996).

2. Analysis

Scott contends that a rational jury could not find that he failed to prove uncontrollable circumstances by a preponderance of the evidence. He claims that being in jail in another jurisdiction constitutes an uncontrollable circumstance under the statutory definition and that his testimony established that he did not contribute to the uncontrollable circumstance in reckless disregard of his requirement to appear in court.

Here, Scott admitted that when he shoplifted five days before his scheduled pretrial hearing, he knew that (1) the hearing was coming up, (2) he ran the risk of being caught, and (3) he ran the risk of being detained. A reasonable inference is that given this knowledge, Scott knew that engaging in shoplifting would affect his ability to appear at the pretrial hearing. Viewing the evidence in the light most favorable to the State, a rational jury could conclude that

Scott acted in reckless disregard of the requirement that he appear for his court hearing by deliberately shoplifting with knowledge that he had an upcoming hearing.[2]

Therefore, we affirm Scott's bail jumping conviction.

B.      SAG CLAIMS

In his SAG, Scott asserts that we should reverse his second degree burglary convictions on various grounds. We conclude that none of these assertions has merit.

1.      Probable Cause to Arrest

Scott asserts that the police officer that arrested him knew nothing about the circumstances of the crime and therefore lacked probable cause for the arrest.

The "fellow officer rule" allows an arresting officer to rely on what other officers or police agencies know. *State v. Nall*, 117 Wn. App. 647, 650, 72 P.3d 200 (2003). Here the arresting officer could rely on what officer Murray knew to establish probable cause for the arrest. Regarding whether Murray had probable cause, Scott did not challenge the legality of his arrest at trial, so there is no record or findings from the trial court for us to review. Therefore, we do not consider this issue. RAP 2.5(a).

2.      Undue Prejudice

Scott asserts that he suffered undue prejudice at trial because the State repeatedly showed the videos and still photos and introduced his booking photo.

Scott's defense at trial was that he was not the male in the videos and still photos. The State charged Scott with 10 counts of burglary, so it had to establish that Scott was the

---

[2] We need not determine whether being held in custody in another jurisdiction constitutes an "uncontrollable circumstance" as defined in RCW 9A.76.010(4).

perpetrator in 10 different instances. The State did this by having a store employee authenticate each video and the still photos from those videos.

Regarding the booking photo, the State used it to establish Scott's height and weight at the time of Scott's booking in order to show that he had similar physical characteristics as the male in the videos.

Scott fails to show how any of this evidence created undue prejudice. His assertion fails.

3. Due Process Violations

Scott claims that allowing Smith and her mother to testify violated his right to due process because both had motives to fabricate: Smith got a reduced sentence and her mother has always hated him.

But evidence regarding their motives to fabricate was presented at trial. The jury was aware that Smith was testifying to take advantage of the State's plea offer. And Smith and her mother testified that her mother was not fond of Scott. There was no due process violation. The jury was allowed to evaluate the evidence and determine its weight and credibility. Scott's assertion fails.

4. Exclusionary Rule

Scott claims that the exclusionary rule should have applied, but he does not identify what evidence should have been excluded and what legal basis supports exclusion. As a result, we will not consider this assertion. RAP 10.10(c).

5. ER 403 Violations

Scott asserts that the prosecutor created unfair prejudice by repeating testimony, leading witnesses, and creating confusion. But as we noted above, the State had the burden of proving 10 counts of burglary. And each time repetitive evidence was presented, the State had differing

purposes. The store employee's testimony explained the store's process and authenticated the videos. Murray and Smith provided identification testimony. And while the trial court cautioned the prosecutor about leading certain witnesses and sustained Scott's objection, Scott fails to show how this prejudiced him. Scott's assertion fails.

6.    Unreliable Witnesses

Scott asserts that the trial court should have excluded Smith's and her mother's testimony because they were unreliable witnesses. But as we noted above, it was the jury's role to assess the credibility of these witnesses and Scott had the right of cross-examination to undermine their credibility. Scott's assertion fails.

## CONCLUSION

We affirm Scott's convictions of nine counts of second degree burglary and bail jumping.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

I concur:

LEE, C.J.

GLASGOW, J. (dissenting in part)—Michael Robert Scott got caught shoplifting after he stole cereal and other food because he was hungry. He testified that, at that moment, he was not thinking about an upcoming court appearance for a readiness hearing in Cowlitz County. Scott did not appear at the readiness hearing several days later because he was in jail on the shoplifting charge. While shoplifting for food may have amounted to negligent disregard of the requirement to appear at the readiness hearing, it was not reckless disregard. I would reverse Scott's bail jumping conviction.

It is undisputed that Scott was indigent and had a drug problem. He stole cereal and other food from a grocery store because he was hungry, and he was arrested in Oregon for shoplifting. At trial, he said he was not thinking about his upcoming court date. "I was hungry. I stole. It was food." Verbatim Report of Proceeding (VRP) (Oct. 18, 2018) at 499.

It is undisputed that Scott was incarcerated for several days as a result of the shoplifting charge and he was in jail in Oregon on the date he was supposed to appear in Cowlitz County for a pretrial readiness hearing on the charges at issue in this case. It is undisputed that as soon as he was released, Scott was immediately transported back to Washington and he appeared in both Clark and Cowlitz Counties where he had pending charges.

As a result, despite Scott's regular appearance at his arraignment and all of his required court hearings related to the underlying charges in this case occurring before and after this one for more than a year, the State pursued bail jumping charges.

At trial, Scott did not dispute that the elements of bail jumping were met. He knew his appearance was required for the pretrial readiness hearing, and he failed to appear. *See* former RCW 9A.76.170(2) (2001). But when Scott missed his hearing, Washington's bail jumping statute

provided an affirmative defense if "uncontrollable circumstances prevented the person from appearing or surrendering, [so long as] the person did not contribute to the creation of such circumstances *in reckless disregard of the requirement to appear* or surrender." *Id.* (emphasis added). In addition, the person must have appeared as soon as such circumstances ceased to exist. *Id.* Here, the undisputed evidence proved the elements of this affirmative defense by a preponderance of the evidence.

First, Scott's incarceration in another jurisdiction was an uncontrollable circumstance that prevented him from appearing in court in Cowlitz County. The majority recites the definition of "uncontrollable circumstance" and its nonexclusive list of examples, which includes missing court for hospitalization or medical treatment. In *State v. Fredrick,* 123 Wn. App. 347, 352-53, 97 P.3d 47 (2004), this court noted that hospitalization would be a qualifying barrier to appearance in court. Incarceration in another jurisdiction is at least as impenetrable a barrier to appearance in court as hospitalization. The State does not dispute that there was no way for Scott to obtain release from jail in Oregon in order to appear in Cowlitz County Superior Court for his readiness hearing.

Second, although Scott contributed to his inability to appear by shoplifting food, and Scott may have acted with negligence, he did not act with reckless disregard of the requirement to appear. There is no dispute that Scott was indigent and he did not think about his upcoming readiness hearing in Cowlitz County when he shoplifted food: "I didn't even think about that. I was hungry. I stole. It was food." VRP (Oct. 18, 2018) at 499. He also said that he was not proud of his decision, but it was his hunger that motivated his shoplifting.

As this case demonstrates, bail jumping charges disproportionately burden people who are poor, and they also disproportionately impact people of color. Studies have found that indigent

defendants are more likely to fail to appear at a required court hearing. Aleksandrea E. Johnson, *Decriminalizing Non-Appearance in Washington State: The Problem and Solutions for Washington's Bail Jumping Statute and Court Nonappearance*, 18 SEATTLE J. FOR SOC. JUST. 433, 441-442 (2020); Haley R. Zettler & Robert G. Morris, *An Exploratory Assessment of Race and Gender-Specific Predictors of Failure to Appear in Court Among Defendants Released via a Pretrial Services Agency*, 40 CRIM. JUST. REV. 417, 426 (2015) ("In all models included, indigence had a positive, significant impact on [the failure to appear] (i.e., indigent defendants were more likely to [fail to appear])."). Inability to obtain reliable transportation, lack of reliable child care, and inability to get time away from work are just some factors that have been found to cause indigent defendants to fail to appear. Johnson, *supra* at 441.

Moreover, bail jumping charges disproportionately impact Black and Latinx defendants, who are more likely to fail to appear than white defendants. *Id.* at 442 n.43 (citing Zettler & Morris, *supra* at 419). In some jurisdictions, women are more likely to fail to appear than men. *Id.* Studies of bail jumping charges also reflect systemic racial disparities. Black and Latinx defendants are more likely to be charged with bail jumping and other crimes arising out of a failure to appear. *Id.* at 442.

The consequences for bail jumping convictions can be severe and compound these disparities. Bail jumping convictions not only increase a defendant's immediate sentence, but they can increase a person's offender score if they have future convictions. *Id.* at 460. A bail jumping conviction impacts future determinations of whether a person should be released pending trial, regardless of why they failed to appear. *Id.* at 460-61. And a bail jumping conviction can have dire consequences for a person's immigration status, including depriving them of the ability to obtain

asylum or seek cancellation of removal. *Id.* at 461-62 (citing, for example, *Henriquez v. Sessions*, 890 F.3d 70, 73-74 (2d Cir. 2018)).

Perhaps recognizing these systemic disparities, the legislature significantly overhauled Washington's bail jumping statutes in the 2020 legislative session. The legislature drastically narrowed the crime of bail jumping to apply where a person has failed to appear for trial. LAWS OF 2020, ch. 19, § 1. Bail jumping can also be charged where a person's underlying charge is a violent or sex offense and the person has missed a required personal appearance in court. *Id.* But the legislature also created a safe harbor for missed hearings other than trial. *Id.* So long as the person has not had a prior failure to appear in the same case, they cannot be convicted of bail jumping if they bring a motion to quash within 30 days of the issuance of the warrant for failure to appear and they appear for the hearing on the motion. *Id.*

In addition, the legislature created a lesser included offense of failure to appear. A person can be convicted of failure to appear at a required court appearance regardless of the nature of the underlying offense. LAWS OF 2020, ch. 19, § 2. But the failure to appear statute contains the same safe harbor. A person who has not failed to appear at a prior hearing in the same case cannot be convicted of failure to appear if they bring a motion to quash within 30 days of the issuance of the warrant for failure to appear and they appear for the hearing on the motion. *Id.*

If the new statute applied, Scott could only have been charged with failure to appear because burglary in the second degree is not a violent offense,[3] and he could have avoided conviction so long as he brought a motion to quash within 30 days and appeared at the hearing on the motion. But the new statute did not take effect until 2020.

---

[3] *See* RCW 9A.52.030(2) (defining "burglary in the second degree" as a class B felony); RCW 9.94A.030(55) (defining "violent offenses").

Importantly for purposes of this case, however, within the overall context of these statutory amendments severely limiting bail jumping and creating a safe harbor for both bail jumping and failure to appear, the legislature also amended the available affirmative defense. After the effective date of the new statute, a person who fails to take advantage of the safe harbor and who instead invokes the affirmative defense must prove by a preponderance of the evidence that they did not contribute to the creation of the uncontrollable circumstances preventing them from appearing by *negligently disregarding* the requirement to appear. LAWS OF 2020, ch. 19, § 1.

This 2020 amendment to the affirmative defense spotlights the mens rea that the defendant must prove by a preponderance of the evidence to establish the affirmative defense. The change reflects a legislative understanding that there is a difference between reckless disregard for the requirement to appear and negligent disregard.

Here, the former version of the statute applies and Scott only had to show that he did not act with reckless disregard. Scott shoplifted because he was experiencing a basic human need—he was hungry. He was not thinking about his upcoming court date. And his decision to shoplift was not certain to interfere with his court appearance because, even assuming he was arrested and charged, it was possible he would be released. Ignoring the possibility that shoplifting might prevent his appearance in court in Cowlitz County several days later was probably negligent. But in light of the undisputed evidence, I cannot see how a rational trier of fact could conclude that it was reckless.

Third, it is undisputed that as soon as he was released, Scott was immediately transported back to Washington and he appeared in both Clark and Cowlitz Counties where he had pending charges.

I would reverse Scott's bail jumping charge because, in light of the undisputed facts, the State failed to prove the affirmative defense did not apply.

I dissent.

_____
Glasgow, J.